UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
JOHN HAMMERSCHMIDT

                Plaintiff,

     v.

CONSOLIDATED COMMUNICATIONS
HOLDINGS, INC., ROBERT J CURREY,
ANDREW S. FREY, DAVID G. FULLER,
THOMAS A. GERKE, ROGER H. MOORE,
MARIBETH S. RAHE, MARISSA M. SOLIS,
and ROBERT UDELL, JR.,

                Defendants.

Case No. 23-cv-10424

**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS AND DELAWAR STATE LAW**

**JURY TRIAL DEMANDED**

Plaintiff John Hammerschmidt ("Plaintiff"), by the undersigned attorneys, alleges as follows based (i) upon personal knowledge with respect to Plaintiff's own acts, and (ii) upon information and belief as to all other matters based on the investigation conducted by Plaintiff's attorneys, which included, among other things, a review of relevant U.S. Securities and Exchange Commission ("SEC") filings, and other publicly available information.

## NATURE OF THE ACTION

1. This action is brought by Plaintiff against Consolidated Communications Holdings, Inc. ("Consolidated" or the "Company") and the members of Consolidated's Board ("Board") for (i) violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a) and § 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9(a) ("Rule 14a-9"), and (ii) breach of fiduciary duties under Delaware law. Plaintiff's claims arise in connection with the solicitation of public stockholders of Consolidated to vote in favor of a merger transaction ("Merger") pursuant to which affiliates of Searchlight Capital Partners, L.P. ("Searchlight") will acquire all of the

outstanding shares of common stock of Consolidated held by public stockholders for $4.70 per share in cash ("Merger Consideration"), and Consolidated will merge into an affiliate of Searchlight.

2. As of November 14, 2023, Searchlight owned 33.8% of the common shares of Consolidated, and 100% of the Series A Preferred Stock of Consolidated.

3. On October 16, 2023, Consolidated announced the Merger.

4. On November 20, 2023, Defendants authorized the filing of a false and misleading preliminary proxy on Schedule 14A ("Proxy") with the SEC, in (i) violation of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9, and (ii) breach of fiduciary duties under Delaware law, with the aim of soliciting Consolidated stockholders to vote for the Merger ("Stockholder Vote") at a special meeting ("Special Meeting") of Consolidated stockholders to be held on a date yet to be determined. The Proxy advises Consolidated stockholders that "[y]our vote is important, regardless of the number of shares you own" because Consolidated cannot complete the Merger unless it is approved by a majority of the stockholders of Consolidated unaffiliated with Searchlight ("Unaffiliated Stockholders").

5. As detailed below, the Proxy contains material omissions that render the Proxy false and misleading in violation of (i) the above-referenced Exchange Act provisions and Rule 14a-9, and (ii) Delaware law.

6. The violations referenced above must be cured in advance of the Stockholder Vote to enable Unaffiliated Stockholders to cast informed votes with respect to the Merger. Therefore, Plaintiff seeks to enjoin the Defendant from taking any further steps to consummate the Merger and schedule the Stockholder Vote, until such violations are cured. Alternatively, if the Merger is consummated, Plaintiff reserves the right to recover damages suffered by Plaintiff and similarly-

situated investors as a result of such violations.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act pursuant to Section 57 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction). The Court has subject matter jurisdiction over the claims for breach of fiduciary duty under Delaware law under 28 U.S.C. § 1367 (providing supplemental jurisdiction over all other claims that are related to claims in the action within the Court's original jurisdiction).

8. This Court has personal jurisdiction over each of the Defendants because each defendant has sufficient minimum contacts with the United States so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. *See Moon Joo Yu v. Premiere Power LLC*, No. 14 CIV. 7588 KPF, 2015 WL 4629495, at *5 (S.D.N.Y. Aug. 4, 2015) (because Exchange Act provides for nationwide service of process, and Defendant resides within the United States, and conducts business within the United States, he should reasonably anticipate being hauled into court in the United States, and Court's exercise of personal jurisdiction over Defendant with respect to Plaintiffs' securities fraud claim is proper); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015) ("[w]hen the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process . . . Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").

9. Venue is proper under 28 U.S.C. § 1391(b) because Defendants transact business in this District. In particular, Consolidated's common stock trades under the ticker "CNSL" on

3

Nasdaq, which is headquartered in this District, and the false and misleading Proxy was filed with the SEC, which has a regional office in this District. *See Mariash v. Morrill*, 496 F.2d 1138, 1144 (2d Cir. 1974) (venue appropriate in the Southern District of New York where an act or transaction constituting the alleged violation occurred in the Southern District of New York); *United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (venue in tender offer fraud prosecution appropriate in District).

## PARTIES

10. Plaintiff is, and has been at all relevant times, a stockholder of Consolidated common stock.

11. Defendant Consolidated is a Delaware corporation with its principal executive offices located at 2116 South 17th Street, Mattoon, Illinois 61938. Consolidated provides a wide range of data, Internet and other communication solutions to consumer, commercial and carrier customers in over 20 states over a network of copper and fiber cables.

12. Defendant Robert J. Currey presently serves as Chair of the Board and has served as a member of the Board at all relevant times.

13. Defendant Andrew S. Frey has served as a member of the Board at all relevant times. Frey is a partner at Searchlight.

14. Defendant David G. Fuller has served as a member of the Board at all relevant times. Fuller is a partner at Searchlight.

15. Defendant Thomas A. Gerke has served as a member of the Board at all relevant times.

16. Defendant Roger H. Moore has served as a member of the Board at all relevant times.

17. Defendant Maribeth S. Rahe has served as a member of the Board at all relevant times.

18. Defendant Marissa M. Solis has served as a member of the Board at all relevant times.

19. Defendant Robert Udell, Jr. presently serves as President and CEO of Consolidated and has served as a member of the Board at all relevant times.

20. Defendants identified in paragraphs 12 to 19 are collectively referred to herein as the "Individual Defendants," and together with Consolidated, collectively, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Consolidated Decides to Upgrade Its Network to Fiber

21. In late 2018, the Board decided to embark on a multi-year capital investment strategy to upgrade Consolidated's predominantly copper-based infrastructure to a fiber-based network.

### Searchlight Invests in Consolidated

22. On September 13, 2020, Consolidated entered into an agreement with a Searchlight affiliate pursuant to which Searchlight agreed to invest $425 million in Consolidated in exchange for shares of common stock and Series A Preferred Stock. As a result, as of November 14, 2023, Searchlight owned 33.8% of the common shares of Consolidated, and 100% of the Series A Preferred Stock.

### Searchlight Expresses Interest in Acquiring Consolidated

23. On March 7, 2022, Searchlight filed an amendment to its Schedule 13D with respect to Consolidated stating that it intended to evaluate the possibility of a further investment in or full acquisition of Consolidated. In response, on April 1, 2022, the Board formed a Special Committee

5

consisting of purportedly independent and disinterested directors—Defendants Currey, Gerke, Moore, Rahe and Solis—to evaluate and negotiate a potential transaction with Searchlight. The Special Committee retained Cravath, Swaine & Moore LLP ("Cravath") as its independent legal advisor after confirming that such retention did not raise any conflicts.

24. On May 10, 2022, however, Searchlight advised that it did not, at such time, intend to deliver a proposal for a potential transaction with Consolidated. Consequently, on July 1, 2022, the Board disbanded the Special Committee. Thereafter, Consolidated continued to execute on its capital investment plan

**Searchlight Submits an Offer to Acquire Consolidated**

25. On April 12, 2023, Searchlight sent the Board a letter proposing to acquire all of the outstanding shares of Consolidated common stock not already owned by Searchlight for $4.00 per share in cash (with funding supplied by Searchlight and a co-investor, British Columbia Investment Management Corporation ("BCI")) ("April 12 Proposal"). The April 12 Proposal was conditioned upon (i) a special committee of independent and disinterested directors appointed by the Board and advised by independent legal and financial advisors recommending that the Board approve the transaction, and (ii) a majority of Unaffiliated Stockholders approving the transaction.

26. In response, on April 29, 2023, the Board again formed a Special Committee consisting of purportedly disinterested and independent directors consisting of Defendants Currey, Gerke, Moore, and Rahe. While Defendant Solis had been appointed to the Special Committee formed on April 1, 2022, she was not appointed to the Special Committee formed on April 29, 2023. The Proxy does not disclose whether or not the failure to appoint Solis to the Special Committee formed on April 29, 2023, was due to a potential conflict affecting Solis that rendered her interested and/or not independent of Searchlight.

27. The Special Committee was empowered to recommend to the full Board whether to enter into a transaction with Searchlight, and the full Board resolved not to enter into a transaction with Searchlight unless recommended by the Special Committee.

28. The Special Committee re-confirmed the engagement of Cravath as independent legal counsel to the Special Committee, and on May 12, 2023, retained Rothschild & Co. ("Rothschild") as its financial advisor.

**Consolidated Reports Strong Growth in its Fiber-Based Services in Q1 2023**

29. On May 2, 2023, Consolidated reported results for Q1 2023. In a press release, Defendant Udell stated:

> We added a record 12,337 consumer fiber broadband subscribers in the first quarter and achieved 60% growth year over year. Our plan to drive improved penetration through a refined go-to market strategy is off to a great start with particularly strong fiber net adds of 5,200 in March, and approaching 6,000 in April. On the heels of this positive momentum, we expect to see another milestone of record net fiber adds in the second quarter.

30. The press release further stated that "[w]ith no maturities until 2027, healthy liquidity and fiber penetration growth, Consolidated remains well positioned to continue executing on its fiber expansion and growth plan."

31. On May 2, 2023, in connection with reporting Q1 2023 results, Consolidated also gave a presentation ("May 2 Presentation") to analysts. The May 2 Presentation projected that by 2026, Consolidated would have approximately 2 million fiber "passings" built, representing 70% of Consolidated's total "passings" (after including copper passings). The May 2 Presentation further stated that Consolidated was "[w]ell capitalized to continue executing on [its] fiber investment growth plan."[1]

---

[1] A passing represents a cable installed by Consolidated that passes close enough to a home or

*Continued…*

7

32. The Proxy fails to disclose Q1 2023 results even though it discloses the results for the fiscal year ended December 31, 2022, reported on February 28, 2023.

**Consolidated Management Presents a Series of Standalone Projections to the Special Committee**

33. On May 15, 2023, representatives of Consolidated management provided the Special Committee with an initial draft of a plan consisting of nonpublic projections for fiscal years 2023 through 2031 ("May Standalone Plan").

34. Like the May 2 Presentation, the May Standalone Plan projected that by 2026, 70% of Consolidated's passings would be fiber. This is evident from the presentation given by Rothschild on June 6, 2023, which discussed the "May 70% Build Plan" reflecting 70% of passings consisting of fiber by 2026. Indeed, in a subsequent presentation given by Rothschild on June 22, 2023, this plan is explicitly referred to as the "2026 70% Build Plan."

35. On June 14, 2023, after extensive discussions with Consolidated management and Rothschild, the Special Committee unanimously approved Rothschild's use of the May Standalone Plan to prepare a fairness opinion and financial analyses. The Proxy, however, does not disclose the projections in the May Standalone Plan.

36. On June 19, 2023, following meetings between Rothschild and Consolidated management on June 15, 2023 and June 19, 2023, Consolidated management shared an updated version of the May Standalone Plan ("June Standalone Plan") that purportedly made certain so-called "technical" corrections to the May Standalone Plan that among other things, (1) reduced the projected fiber build rate pace in the near term to maintain an appropriate minimum liquidity level, and (2) increased the projected fiber build rate pace in later years when Consolidated's liquidity

---

business that Consolidated may provision broadband service to that home or business from that cable.

position was projected to strengthen. On June 21, 2023, the Special Committee unanimously approved Rothschild's use of the June Standalone Plan to prepare a fairness opinion and financial analyses. The Proxy discloses the projections in the June Standalone Plan.

37. In fact, the so-called "technical" corrections to the May Standalone Plan—*implemented within just a five day timespan*—constituted a material change in Consolidated's fiber buildout plan that projected achieving Consolidated's long-term objective of 70% fiber coverage by 2029 instead of by 2026—an extension of three years. Given the material extension in the timeline for achieving 70% fiber buildout reflected in the June Standalone Plan, the Proxy must disclose the May Standalone Plan to Unaffiliated Stockholders prior to the Stockholder Vote so that Unaffiliated Stockholders can, in deciding how to vote, consider the changes made to the May Standalone Plan to create the June Standalone Plan.

38. Subsequently, on August 30, 2023, Consolidated management shared a revised version of the June Standalone Plan ("August Standalone Plan") with the Special Committee reflecting the impact of certain asset sales and Consolidated's ongoing cost-cutting initiatives.

39. On September 6, 2023, the Special Committee unanimously approved Rothschild's use of the August Standalone Plan to prepare a fairness opinion and financial analyses, and directed Rothschild to share the August Standalone Plan with Searchlight. The Proxy discloses the projections in the August Standalone Plan.

**The Financing Proposal from Party A**

40. On September 6, 2023, Rothschild advised the Special Committee of an unsolicited communication received from an entity referred to in the Proxy as "Party A" regarding a potential $200 million subordinated debt or preferred equity investment. Rothschild advised that Party A intended to submit a written proposal regarding the key proposed terms.

41. On September 26, 2023, Party A provided Rothschild with a written proposal regarding the key proposed terms of a financing for Consolidated. The Proxy, however, fails to disclose the amount of the financing actually offered by Party A and the other material terms upon which such financing was offered. This omission is material since the Proxy asserts that Consolidated had financing constraints that purportedly compelled Consolidated management to extend the timeline for achieving the objective of 70% fiber passings from 2026 to 2029.

42. On September 27, 2023, and then again on October 4, 2023, the Special Committee determined not to engage with Party A on the ground that Party A's financing proposal was not in the best interests of Consolidated's stockholders in light of the terms proposed and the purported risks associated with continuing to operate as a standalone company.

**The Special Committee and Searchlight Agree to the Merger**

43. On September 27, 2023, after extended due diligence and negotiations, Searchlight advised that it and BCI were willing to move forward with a transaction at $4.70 per share in cash.

44. On October 14, 2023, Rothschild delivered its opinion ("Fairness Opinion") to the Special Committee that the Merger Consideration of $4.70 per share in cash was fair to Unaffiliated Stockholders. Thereafter, the Special Committee recommended that the Board approve the Merger.

45. Later that day, the Board met with Cravath, Rothschild, and Latham & Watkins ("Latham"). The Board had engaged Latham as its legal advisor. The Proxy fails to disclose, however, that (i) while advising the Board, Latham was concurrently advising Searchlight with respect to various significant transactional matters, and (ii) Latham had, within the past two years, advised Searchlight on numerous significant transactional matters ("Latham Conflicts"). Several of these matters related to Searchlight's investment in fiber network assets and the provision of

communication services similar to those provided by Consolidated.[2]

46. The directors appointed to the Board by Searchlight—i.e., Defendants Frey and Fuller ("Searchlight Directors")—recused themselves from the meeting. The Proxy does not state, however, that Defendant Solis recused herself even though, as noted, it is unclear whether or not the failure to appoint Solis to the Special Committee formed on April 29, 2023, was due to a potential conflict affecting Solis that rendered her interested and/or not independent of Searchligh.

47. At the meeting on October 14, 2023—after "detailed discussions" with Latham and Rothschild—the Board approved the Merger as fair to and in the best interests of Unaffiliated Stockholders. The Proxy touts that this approval was "unanimous."

48. On October 16, 2023, Consolidated announced the Merger.

**The Proxy Contains Material Omissions**

49. As detailed below, the Proxy omits material facts necessary for Unaffiliated Stockholders to cast fully informed votes with respect to the Merger. The federal securities laws, and Delaware law, obligate the Defendants to disclose these omitted facts to Unaffiliated Stockholders in advance of the Stockholder Vote so that Unaffiliated Stockholders can cast fully informed votes with respect to the Merger.

---

[2] *See* (1) https://www.lw.com/en/news/2023/11/latham-watkins-advises-searchlight-capital-partners-on-acquisition-of-integrated-power-services; (2) https://www.lw.com/en/news/2023/10/latham-watkins-advises-searchlight-on-strategic-investment-in-mainstream-fiber-networks; (3) https://www.lw.com/en/news/2023/05/latham-watkins-advises-searchlight-capital-partners-on-strategic-investment-in-wecom; (4) https://www.lw.com/en/news/2022/11/latham-advises-searchlight-capital-partners-on-its-minority-stake-investment-in-synergy-marine-group; (5) https://www.lw.com/en/news/2022/05/latham-watkins-advises-searchlight-capital-partners-lp-on-take-private-of-hemisphere-media-group; (6) https://www.lw.com/en/news/2022/04/latham-watkins-advises-searchlight-capital-partners-mediamath-recapitalization-transaction; (7) https://www.lw.com/en/news/2021/09/latham-watkins-advises-searchlight-capital-partners-strategic-investment-adams-outdoor-advertising.

*The Proxy Fails to Disclose Any Potential Conflicts of Defendant Solis*

50. The Proxy discloses that the Special Committee formed on April 1, 2022—in response to Searchlight's initial expression of interest in acquiring Consolidated—consisted of Defendants Currey, Gerke, Moore, Rahe, and Solis. The Proxy states that all such directors were disinterested in any transaction with Searchlight and independent of Searchlight. Yet, when the Board again formed the Special Committee on April 29, 2023—in response to Searchlight's April 12 Proposal—Defendant Solis was not a member. The Proxy fails to disclose whether the Board failed to appoint Defendant Solis to the Special Committee formed on April 29, 2023, because of a potential conflict that rendered Solis interested in a transaction with Searchlight and/or not independent of Searchlight.

51. The failure to disclose whether or not Solis had a potential conflict renders a statement in the Proxy misleading, i.e., that the Board's approval of the Merger at its October 14, 2023 meeting ("October 14 Board Meeting") was "unanimous." The Proxy indicates that the Searchlight Directors recused themselves from the October 14 Board Meeting, but does not state that Defendant Solis recused herself, which indicates that Solis attended that meeting. The Proxy touts that Board approval at the October 14 Board Meeting was unanimous. But if Solis had a potential conflict, she would have had an undisclosed motive to approve the Merger other than solely on its merits and the reference to "unanimous" approval would be misleading. Disclosure of any conflict affecting Solis would enable Unaffiliated Stockholders to contextualize the Board's "unanimous" approval of the Merger when deciding how to vote. *See Allen v. Harvey*, 2023 WL 7122641, at *5 (Del. Ch. Oct. 30, 2023); *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, 2021 WL 4443258, at *9-10 (S.D.N.Y. Sept. 27, 2021).

*The Proxy Fails to Disclose the Projections in the May Standalone Plan*

52.  The Proxy states that the Special Committee approved Rothschild's use of the May Standalone Plan to prepare the Fairness Opinion. This indicates that the projections in the May Standalone Plan were reliable. The Proxy further states that certain so-called "technical" corrections were thereafter made to the May Standalone Plan to create the June Standalone Plan. However, as noted above, characterizing these corrections as "technical" is misleading since they extended the timeline to achieve the objective of 70% fiber passings from 2026 to 2029; as such, the corrections to the May Standalone Plan were material changes. Therefore, just as the Proxy discloses the projections in the June Standalone Plan and in the August Standalone Plan, Defendants must also disclose the projections in the May Standalone Plan to Unaffiliated Stockholders so that, when deciding how to vote, Unaffiliated Stockholders can evaluate the changes made to the May Standalone Plan that resulted in the June Standalone Plan. *See Azar v. Blount Int'l, Inc*., 2017 WL 1055966, at *6 (D. Or. Mar. 20, 2017).

*The Proxy Fails to Disclose the Material Terms of the Party A Financing Proposal*

53.  The Proxy advises that Party A indicated that it would submit a proposal to provide $200 million in financing to Consolidated. But when the Proxy references the proposal submitted by Party A on September 26, 2023, it fails to disclose the amount of the financing actually offered by Party A and the other material terms upon which such financing was offered. Disclosure of the amount and other material terms of the financing offered by Party A would enable Unaffiliated Stockholders—when deciding how to vote—to weigh the credibility of the Proxy's assertion that Consolidated had financing constraints, and contextualize the Special Committee's decision not to engage with Party A concerning an alternative transaction. *See New Enter. Assocs. 14, L.P. v. Rich*, 292 A.3d 112, 151 (Del. Ch. 2023).

*The Proxy Fails to Disclose the Latham Conflicts*

54. The Proxy stresses the independence of the law firms advising on the Merger, but fails to disclose the Latham Conflicts, which show that (i) Latham was simultaneously advising Searchlight with respect to significant legal matters while advising the Board in connection with its decision whether or not to approve the Merger, and (ii) in the two years prior to October 14, 2023, Latham had advised Searchlight on several significant legal matters. Since the Proxy (i) touts that the Board's approval of the Merger was "unanimous," and (ii) indicates that such unanimous approval occurred after "detailed discussions" with Latham, Defendants must disclose the Latham Conflicts to Unaffiliated Stockholders so that Unaffiliated Stockholders can weigh the significance of those conflicts when deciding how to vote with respect to the Merger. *See Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 993-94 (2d Cir. 1988).

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants
for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

55. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

56. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any Proxy, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

14

57. Defendants disseminated the false and misleading Proxy, which made false and misleading statements, and failed to disclose material facts necessary in order to make statements made therein, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

58. By virtue of their positions within Consolidated, and/or roles in the process of preparing, reviewing, and/or disseminating the Proxy, the Individual Defendants were aware of their duty not to make false and misleading statements in the Proxy, and not to omit material facts from the Proxy necessary to make statements made therein—in light of the circumstances under which they were made—not misleading.

59. Yet, as specified above, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, Defendants (i) made untrue statements of material fact in the Proxy, and/or (ii) omitted material facts from the Proxy necessary to make statements therein— in light of the circumstances under which they were made—not misleading, in order to induce Unaffiliated Stockholders to vote in favor of the Merger. Defendants were at least negligent in filing the Proxy with these material misrepresentations and omissions.

60. The material misrepresentations and omissions in the Proxy specified above are material insofar as there is a substantial likelihood that a reasonable Unaffiliated Stockholder would view correction of the misrepresentations, and disclosure of the omitted facts specified above as significantly altering the "total mix" of information made available to Unaffiliated Stockholders.

61. The Proxy explains that Consolidated cannot complete the Merger unless it is approved by a majority of the Unaffiliated Stockholders. The Proxy soliciting the votes of Unaffiliated Stockholders is thus an essential link in the accomplishment of the Merger, and

transaction causation is established.

62. Because of the material misrepresentations and omissions in the Proxy specified above, Plaintiff and other Unaffiliated Stockholders are threatened with irreparable harm insofar as Plaintiff and other Unaffiliated Stockholders will be deprived of their entitlement to cast fully informed votes with respect to the Merger if such material misrepresentations and omissions are not corrected before the Stockholder Vote. Therefore, injunctive relief is appropriate.

## COUNT II

### Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

63. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

64. The Individual Defendants acted as controlling persons of Consolidated within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and/or directors of Consolidated, and participation in, and/or awareness of Consolidated's operations, and/or knowledge of the contents of the Proxy filed with the SEC, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Consolidated with respect to the Proxy, including the content and dissemination of the various statements in the Proxy that Plaintiff contends are materially false and misleading, and the omissions of material fact specified above.

65. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66. Each of the Individual Defendants had direct and supervisory involvement in the

negotiation of the Merger, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised same.

67. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered in connection with such negotiation, review and approval.

68. By virtue of the foregoing, the Individual Defendants had the ability to exercise control over and did control a person or persons who violated Section 14(a), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and other Unaffiliated Stockholders will be irreparably harmed.

69. Plaintiff and other Unaffiliated Stockholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and other Unaffiliated Stockholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict upon Plaintiff and other Unaffiliated Stockholders in terms of casting fully informed votes with respect to the Merger.

## COUNT III

### Against the Individual Defendants for
### Breach of Fiduciary Duty Under Delaware Law

70. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

71.     The Individual Defendants, as directors of a Delaware corporation, owed Plaintiff and other Unaffiliated Stockholders fiduciary duties of due care, good faith, candor, and loyalty under Delaware law.

72.     The Individual Defendants breached their fiduciary duties under Delaware law by omitting material facts from the Proxy that are necessary for Plaintiff and other Unaffiliated Stockholders to know in order to cast fully informed votes with respect to the Merger, as detailed above.

73.     The facts omitted from the Proxy as detailed above are material because there is a substantial likelihood that a reasonable Unaffiliated Stockholder would view disclosure of such facts as significantly altering the 'total mix' of information made available to them.

74.     As a result of the Individual Defendants' breaches of fiduciary duty, Plaintiff and other Unaffiliated Stockholders will be harmed by being deprived of their right to cast fully informed votes with respect to the Merger.

75.     Plaintiff and other Unaffiliated Stockholders have no adequate remedy at law, and as a result of the Individual Defendants' breaches of fiduciary duty, are threatened with irreparable harm by virtue of being deprived of their entitlement to cast fully informed votes with respect to the Merger, as more fully explained above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, employees and all other agents and persons acting in concert with them from proceeding with and holding the Stockholder Vote and consummating the Merger, unless and until Defendants disclose and

disseminate to Unaffiliated Stockholders the material information specified above that has been omitted from the Proxy, and correct any false and misleading statements in the Proxy;

  B. Finding Defendants liable for violating Sections 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

  C. Finding the Individual Defendants liable for violating Section 20(a) of the Exchange Act, and breaching their fiduciary duties under Delaware law;

  D. Rescinding, to the extent already implemented, the Merger Agreement or any of the transactions contemplated thereby, or granting Plaintiff rescissory damages;

  E. Directing Defendants to account to Plaintiff for all damages suffered as a result of their misconduct;

  F. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

  G. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 29, 2023    **WOHL & FRUCHTER LLP**

    By:/s *Joshua E. Fruchter*
    Joshua E. Fruchter (JF2970)
    25 Robert Pitt Drive, Suite 209G
    Monsey, NY 10952
    Tel: (845) 290-6818
    Fax: (718) 504-3773
    Email: jfruchter@wohlfruchter.com

    *Attorneys for Plaintiff*